In the Matter of NEW YORK STATE COUNCIL OF RETAIL MERCHANTS, INC., et al., Petitioners, v PUBLIC SERVICE COMMISSION OF THE STATE OF NEW YORK, Respondent, and LONG ISLAND LIGHTING COMPANY, Intervenor-Respondent.

Third Department, May 11, 1978

**APPEARANCES OF COUNSEL**

*Weil, Gotshal & Manges (Stuart M. Rosen* of counsel), for petitioners.

*Peter H. Schiff (John C. Crary* and *Janet Hand Deifler* of counsel), for respondent.

*Edward M. Barrett (James J. Stoker, III,* and *Maida J. Oringher* of counsel), for intervenor-respondent.

### OPINION OF THE COURT

Kane, J.

In 1975 the respondent Long Island Lighting Company (LILCO) sought a general rate increase. The respondent Public Service Commission (PSC) suspended implementation of those rates pending a hearing and further directed LILCO to propose "time-of-day" charges for its service. LILCO responded accordingly and suggested that certain variable time related rates be applied to a limited grouping of its customers, numbering about 175, who consumed large quantities of electricity. The hearing on this matter was lengthy and the PSC made several modifications in the initial proposal, but it ultimately accepted the basic plan and, on December 16, 1976, ordered the imposition of such rates on customers designated as being within Service Classification 2-Multiple Rating Period (SC 2-MRP). The New York State Council of Retail Merchants, Inc. had opposed LILCO's proposal and participated in proceedings leading up to that order. Denied a rehearing on February 28, 1977, and joined by four of its corporate members subject to the SC 2-MRP rates, it now petitions for judicial relief in this article 78 proceeding. Before addressing the complex issues presented, some elaboration on time-of-day pricing is in order.

We are advised that the rating methodology adopted herein has not previously been used by electric utilities in this jurisdiction and, consequently, the record is replete with materials on the theoretical validity of tying charges for electrical service to the costs associated with the particular times that service is rendered. In the broadest sense, the demand for electricity fluctuates and it is cheaper to generate it during periods of slack demand than when its use approaches the supplier's finite capacity to deliver such power. Assuming these changeable levels of demand can be identified and properly matched with their related costs, it is said that just and reasonable rates can be developed therefrom to reimburse the utility according to the proportionate cost burden the individual customer imposes on it when consuming electricity at different times. Petitioners do not attack the over-all soundness of this concept and we, of course, are not

free to question the wisdom of PSC's decision to employ it. Therefore, it only remains to be seen whether substantial evidence supports the rate calculations actually made in reliance on that theory and, if so, whether the resulting charges may be lawfully applied in the manner approved by the PSC.

Marginal cost techniques were used to formulate separate rates under SC 2-MRP for each of three mutually exclusive time segments with the highest charge attaching to electric consumption between the hours of 10:00 A.M. to 10:00 P.M. on any day except Sunday during the summer months of June through September. This time framework corresponded to the period LILCO experienced its greatest or peak demand for service and petitioners no longer dispute the choice of such hours as appropriate for the imposition of a distinct rate. However, many elements contribute to the higher costs of furnishing electricity in a peak period and petitioners chiefly question the measurement of one of them; namely, marginal capacity costs. We are impressed by petitioners' complaint in this respect since the record seems to bear out their assertion that LILCO already possesses considerable excess capacity making it unlikely that demand would increase over the next several years to the point where the need for additional generating and transmission equipment may be reasonably contemplated and taken into account as a legitimate cost factor in the establishment of current rates. The PSC and LILCO present a compelling argument for the inclusion of capacity costs from a theoretical standpoint, but we are not convinced that the present record contains sufficient evidentiary support to justify the translation of that theory into the rates as finally determined. Nevertheless, we find it unnecessary to comment further on that issue for, even if it is assumed that the SC 2-MRP rates are proper in amount, we agree with petitioners' claim that the application of those rates constitutes an unlawful inter-class price discrimination in violation of subsivisions 2 and 3 of section 65 of the Public Service Law.

As previously indicated, SC 2-MRP rates do not affect all of LILCO's customers. Although the class to which they do apply is defined in terms of use to those who have consumed 750 KW of electricity in any two months of the preceding 12, the record plainly discloses that this classification was arbitrarily drawn. Time-of-day pricing mandates the use of special metering devices which had been installed at only a few of LILCO's

largest customers when its initial proposal was placed before the PSC, and LILCO was also well aware that if such rates were approved the billing process for those meters would have to be accomplished manually. In short, the threshold of eligibility for time based charges is phrased in language of quantity but, in actuality, practical considerations dictated the choice of that language. Leaving aside the rationality of that approach, however, a more fundamental obstacle is encountered for, except as provided by law, an electric utility may not charge one customer more for service rendered than it receives from any other person "for doing a like and contemporaneous service * * * under the same or substantially similar circumstances or conditions." (Public Service Law, § 65, subd 2.)

Petitioners contend that a customer who falls just below the SC 2-MRP use level will receive electricity in a peak period under exactly the same circumstances as one within that category and yet will pay far less than the SC 2-MRP customer receiving the same amount of electricity at that time. In reply, LILCO and the PSC point to subdivision 5 of section 65 of the Public Service Law which provides, in relevant part, as follows: "Nothing in this chapter shall be taken to prohibit a * * * electrical corporation from establishing classifications of service based upon the quantity used, the time when used, the purpose for which used, the duration of use or upon any other reasonable consideration, and providing schedules of just and reasonable graduated rates applicable thereto." There can be no doubt that price discrimination based on time is expressly authorized, but once that has been achieved, as with SC 2-MRP rates, the statute does not necessarily sanction a further subclassification which foists those charges on a selective few. Although this additional limitation on the reach of SC 2-MRP rates appears to be grounded on the permissible factor of quantity used, the record contains no suggestion that both time and quantity considerations were integrated in arriving at the rates themselves. While marginal costing principles determined costs related to levels of demand at different times, no effort was made to attribute particular cost significance to the quantity of an individual's demand within those levels. As a result, if there is any reason to believe that a customer who consumes large amounts of electricity in a peak period is more responsible for the higher costs imposed on a utility at those times than another who receives less

power in the same period, the present record does not supply a foundation for that proposition or an evaluation of its impact on rates. Application of the instant SC 2-MRP rates to a limited classification without some cost justification therefor would produce an undue preference or advantage favoring those who are not within that class in violation of subdivision 3 of section 65 of the Public Service Law. Moreover, rate fixing that departs from cost allocations must have a rational basis and here there is inadequate support to transform conclusions about the elasticity of time demand for electric service or the difficulty of metering into definite rates (see *Matter of Lefkowitz v Public Serv. Comm.,* 50 AD2d 338, affd 40 NY2d 1047).

The determination should be annulled and the petition granted, without costs.

GREENBLOTT, J. P., SWEENEY, STALEY, JR., and MAIN, JJ., concur.

Determination annulled, and petition granted, without costs.